UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CLARA M. GREEN<br>ON BEHALF OF K.C.G. | CIVIL ACTION NO. 09-1028 |
| VERSUS | JUDGE HAIK |
| MICHAEL ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY | MAGISTRATE JUDGE HANNA |

### *REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for reconsideration consistent with this report and recommendation.

### *Background and the Commissioner's Findings*

Clara M. Green protectively filed an application for child's supplemental security benefits on behalf of her minor daughter K.C.G. on March 6, 2007, alleging disability due to "behavior problems." (R 74). K.C.G. was born on August 25, 1997. (R 57). She was nine years old on the date of the application, ten years old on the date of hearing before the ALJ on August 12, 2008, and eleven years old on the date of the Decision on September 16, 2008. (R 23, 22).

In the Decision, the ALJ found K.C.G. had a severe impairment of "specific learning disorder." (R 13). The ALJ found this severe impairment separately or in

1

combination did not meet or medically equal any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix I (20 C.F.R. 416.924, 416.925 and 416.926), nor was any impairment or combination of impairments functionally equivalent to any listed impairment. (R 16). Specifically, the ALJ found K.C.G. had marked limitation in acquiring and using information; less than marked limitation in attending and completing tasks; no limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for herself; and no limitation in health and physical well-being. (R 18-22). Therefore, the ALJ found K.C.G. had not been disabled as defined in the Social Security Act at any time from March 6, 2007, the date of the application, through the date of the Decision on September 16, 2008. (R 19). This appeal followed.

## *Assignment of Errors*

In her brief, claimant alleges the following errors:

1) The ALJ erred in failing to find that claimant met the requirements of Listing 112.05C; and

2) The ALJ erred in failing to find that claimant met the requirements of Listing 112.05D.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the Commissioner's decision is supported by substantial evidence in the record;

and (2) whether the decision comports with relevant legal standards. Carey v. Apfel, 230 F.3d 131, 136 (5th Cir. 2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292; Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991). The court may not reweigh the evidence in the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion. Carey, 230 F.3d at 136; Johnson v. Bowen, 864 F.2d 340, 343 (5th Cir.1988). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. Johnson, 864 F.2d at 343.

### *Childhood Disability Benefits*

An individual under age 18 may be found disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i).

The regulations provide a three-step sequential evaluation process for determining whether a child's impairments result in "marked and severe limitations." First, if the child is engaging in "substantial gainful activity," the child will be found not disabled

3

regardless of medical condition or age, education, or work experience. 20 C.F.R. §416.924(b). Second, the child must have a severe impairment or impairments. If the child suffers from a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will be considered to have no severe impairment, and therefore to be not disabled. Title 20 C.F.R. §416.924(c). Third, the child will be considered disabled if his or her impairment(s) meet, medically equal, or functionally equal in severity a listed impairment in Appendix 1 of Subpart P of Part 404 of the chapter. If a child's impairments do not meet or medically equal a listed impairment, the Commissioner will assess all functional limitations caused by the child's impairments to determine whether the functional limitations are disabling. 20 C.F.R. §§ 416.926a (functional equivalence for children). *See*, *e.g.*, Richardson ex rel. C.R. v. Barnhart, 338 F.Supp.2d 749, 752 (S.D. Tex. 2004).

Whether a child's impairment meets "listing-level severity" is dependent on whether the child has marked limitations in two broad areas of development or functioning or extreme limitation in one of those areas. See 20 C.F.R. § 416.926a(d). The broad areas of functioning are called "domains" and are as follows: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. See 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation is found when an impairment interferes seriously with the

ability independently to initiate, sustain, or complete activities, or is more than moderate but less than extreme. An "extreme" limitation is found when an impairment interferes very seriously with the ability independently to initiate, sustain, or complete activities. §416.926a(e)(2),(3).

## *Applicable Law and Discussion*

### *Listing 112.05*

The child listing for mental retardation reads in relevant part as follows:

112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the requirements in A, B, C, D, E, or F are satisfied.
* * *
C. A valid verbal, performance, or full scale IQ of 59 or less;

or

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function.

### *Medical Findings*

On May 22, 2007, Marc L. Zimmerman, a clinical psychologist, performed an evaluation of K.C.G., which included administration of the Wechsler Intelligence Scale for Children - Fourth Edition (WISC-IV). In his report, Dr. Zimmerman reported the following scores on the WISC-IV:

| Scale | Composite Score | Percentile |
| --- | --- | --- |

| Verbal Comprehension | 69 | 2 |
|---|---|---|
| Perceptional Reasoning | 73 | 4 |
| Working Memory | 71 | 3 |
| Processing Speed | 83 | 13 |
| Post Scale Score | 68 | 2 |

(R 151).

He also summarized these findings, narrating as follows:

Her verbal comprehension, perceptual reasoning, working memory, and full-scale scores are in the mildly retarded range. This is consistent with her mother's description of her daily activities of daily living and with clinical impression. It is likely that these scores are an accurate reflection of her current mental abilities. For raw and scale scores, please see the attached page.

(R 151).

Dr. Zimmerman's diagnostic impressions under the criteria of the Diagnostic and Statistical Manual of Mental Disorders (DSM IV)[1] were as follows:

---

[1] The DSM-IV organizes each psychiatric diagnosis into five levels (axes) relating to different aspects of disorder or disability:
Axis I: clinical disorders, including major mental disorders, as well as developmental and learning disorders
Axis II: underlying pervasive or personality conditions, as well as mental retardation
Axis III: Acute medical conditions and physical disorders.
Axis IV: psychosocial and environmental factors contributing to the disorder
Axis V: Global Assessment of Functioning or Children's Global Assessment Scale for children under the age of 18. (on a scale from 100 to 0)
The global assessment of functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and doctors to rate the social, occupational and psychological functioning of adults. See DSM-IV-TR at 32-36. The scale is described in the DSM-IV-TR. See id. A score of 51 to 60 is used to indicate moderate symptoms or moderate difficulty in social, occupational, or school functioning. See id. at 34.

Axis I:      Specific Learning Disorder
Axis II:     Mild Mental Retardation
Axis III:    Deferred to primary care physician
Axis IV:     Educational
Axis V:      60

( R 151).

Dr. Zimmerman attached a page to his report containing the WISC-IV raw scores, scaled scores, and composite scores. A table of Sums of Scaled Scores to Composite Score Conversions was included as follows:

| Scale | Sum of Scaled Scores | Composite Score | Percentile Rank | 90% Confidence Interval |
|---|---|---|---|---|
| Verbal Comprehension | 14 | 69 | 2 | 65-77 |
| Perceptual Reasoning | 17 | 73 | 4 | 69-82 |
| Working Memory | 10 | 71 | 3 | 67-80 |
| Processing Speed | 14 | 83 | 13 | 78-93 |
| Full Scale | 55 | 68 | 2 | 65-73 |

***Did the ALJ err in failing to find K.C.G.'s Impairment met Listing 112.05C?***

K.C.G. argues she met Listing 112.05(C) because she had a WISC-IV Full Scale score of 55, well below the full scale score of 59 required for Listing 112.05C. K.C.G. argues there is no reference in the Listing to use of a "Composite Score" or "Post Scale Score" used by the ALJ, and the ALJ should have used the Full Scale score of 55 instead of the Post Scale Score of 68.

7

In his Decision, the ALJ dismissed this argument out of hand:

> Her representative contended that she meets Listing 112.05C, which
> requires a valid verbal, performance, or full scale IQ score of 59 or less.
> This simply is not in the record. Dr. Zimmerman found her with one IQ
> score of 69 and one of 68 with the remainder being 71 or greater.

(R 17).

A review of the jurisprudence shows courts, as cited by the Commissioner, when presented with the WISC-IV results are using the Composite, or Index, Scores of the WISC-IV.[2] Independent research shows this appears to be a correct usage. The instructions for use of the WISC-IV reference the use of "Composite Scores" and "Index Scores," not raw or scaled scores. In addition, while the previous version of the Wechsler, the WISC-III, reported scores as performance IQ, verbal IQ, and full scale IQ, as used by the Listing, the WISC-IV reports scores as "verbal comprehension," "perceptional reasoning," "working memory," "processing speed," and "full scale score." The WISC-IV Administration and Scoring Manual instructs that the WISC-IV "Verbal Comprehension Index" is equivalent to Verbal IQ in the WISC-III and "Perceptional Reasoning" is equivalent to Performance IQ in the WISC-III:

> Users of the WISC-III and previous Wechsler intelligence scales should
> note the change in terminology for the composite scores . . .The terms
> Verbal IQ (VIQ) and Performance IQ (PIQ) have been replaced with the
> terms Verbal Comprehension Index (VCI) and Perceptual Reasoning Index

---

[2] Kirksey v. Astrue, 2008 WL 1925170, *4 (E.D. Mo. 2008)(not reported); K.F. by and through Sara F. V. Astrue, 2010 WL 519739 (E.D. Cal 2010)(not reported).

(PRI) respectively.[3]

A review of K.C.G.'s scores show a perceptional reasoning (performance) IQ score of 73, a verbal comprehension (verbal) IQ score of 69, and a post-scale or full-scale score of 68, all of which are above 59, the maximum score necessary to meet Listing 112.05C. Therefore, this assignment of error is without merit.

*Did the ALJ err in failing to find K.C.G.'s Impairment met Listing 112.05D?*

Listing 112.05D requires "significantly subaverage general intellectual functioning with deficits in adaptive functioning" and requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." The ALJ found K.C.G. did not meet Listing 112.05D, reasoning as follows:

> She does not have a valid verbal, performance or full scale IQ of 70 or less with another mental impairment of [sic] a physical impairment which causes loss of work functioning. As discussed above, she reliably functions in the BIF range.
>
> Her speech is clear. It is 100% intelligible. She has no hearing problems. She simply has not mastered the ability to read and write sentences. . .The consultants' opinions are considered to be those of non-examining medical experts. The consultants' opinions appear correct and have been accepted.

(R 16).

It is not clear whether the ALJ or the non-examining state psychologist examined K.C.G's medical records, as she was clearly obese and diagnosed as such. (R 172). On

---

[3]David Wechsler, WISC-IV Administration and Scoring Manual, p. 4, The Psychological Corporation, (2003).

9

June 15, 2007, she was recorded as 57 3/4 inches tall and 141.0 pounds. (R 179). On August 31, 2007, she was recorded as 58 inches tall and 146.6 pounds; her body mass index (BMI) was recorded at 30.6. (R 177). On September 10, 2007, the records show a weight of 148.9 and 57 inches in height. (R 174). On October 23, 2007, the records show a weight of 148.9 and a height of 57 inches, and appear to show diagnoses of hyperinsulin and obesity. (R 173). Glucophage 250 was prescribed, which is used for management of type 2 diabetes.[4] (R 173). On January 21, 2008, her weight was recorded at 154, height at 59 inches and a diagnosis of "obese" is recorded. (R 172). On April 15, 2008, her weight was 159 and height was 60 inches. (R 171).

At the hearing before the ALJ on August 12, 2008, her mother testified she called K.C.G. "Big Mama, " and the ALJ addressed her as "Big Mama" when K.C.G. was on the witness stand. (R 25). K.C.G. testified she did not go out for PE, but she didn't know why. (R 26).

Social Security Ruling 02-1p is relevant to obesity and states in pertinent part as follows:

We will consider obesity in determining whether:

• The individual has a medically determinable impairment. See question 4.

• The individual's impairment(s) is severe. See question 6.

---

[4]"Glucophage is used in addition to diet and exercise to control blood sugar in adults and children with type 2 diabetes." See web page for PDRhealth at http://www.pdrhealth.com/drugs. (February 11, 2011).

• The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. See question 7.

\* \* \*

4. How Is Obesity Identified as a Medically Determinable Impairment?

When establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build, as well as weight and height. *Thus, in the absence of evidence to the contrary in the case record, we will accept a diagnosis of obesity given by a treating source or by a consultative examiner*.

\* \* \*

6. When Is Obesity a "Severe" Impairment?

As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental individual's physical or mental ability to do basic work activities. (*For children applying for disability under title XVI, we will find that obesity is a "severe" impairment when it causes more than minimal functional limitations.*)
\* \* \*

7. How Do We Evaluate Obesity at Step 3 of Sequential Evaluation, the Listings?

Obesity may be a factor in both "meets" and "equals" determinations.

Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders.

> *For example, when evaluating impairments under mental disorder listings 12.05C, 112.05D, or 112.05F, obesity that is "severe," as explained in question 6, satisfies the criteria* in listing 12.05C for a physical impairment imposing an additional and significant work-related limitation of function and *in listings 112.05D and 112.05F for a physical impairment imposing an additional and significant limitation of function*. We will find the requirements of listing 12.05 are met if an individual's impairment satisfies the diagnostic description in the introductory paragraph of listing 12.05 and any one of the four sets of criteria in the listing. *In the case of an individual under age 18, we will find that the requirements of listing 112.05 are met if the child's impairment satisfies the diagnostic description in the introductory paragraph of listing 112.05 and any one of the six sets of criteria in the listing.* (See sections 12.00A and 112.00A of the listings.)

(Emphasis added).

There is no indication in the Decision that the ALJ considered K.C.G.'s obesity in the disability analysis as required by Social Security Ruling 02-1p. Moreover, the failure to do so was not harmless as it appears the requirements of Listing 112.05D may have been met if her obesity had been considered, as discussed below.

The introductory paragraph of 112.05 states that mental retardation is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning." The ALJ found K.C.G. had marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks and no limitations in the other domains. The undersigned notes the ALJ adopted the state agency psychologists' opinions regarding K.C.G.'s adaptive functioning:

> The mild mental retardation diagnosis does not appear consistent with adaptive functioning; that is, she is able to use the telephone/microwave; has age-appropriate monetary skills; has age-appropriate medical decision making. Thus, a diagnosis of borderline intellectual functioning (BIF) appears more appropriate, especially given that the claimant has had

difficulty with receptive/expressive language in the past and the verbal composite score and full scale score were the only ones below 70. Additionally, the Woodcock-Johnson Tests of Achievement - III, oral language extended score of 89 was within normal limits, as was her mathematics score of 83, low average. This rules out mental retardation.

(R. 16).

While not determinative in this matter, the undersigned notes a Woodcock-Johnson Tests of Achievement - III (WJIII) oral language score of 89 is not "within normal limits" - it is, like her mathematics score, "low average."[5] In fact, there is no designation on the WJIII for a range of "within normal limits." The ranges are: 69 and below, Very Low; 70 - 79, Low; 80 - 89, Low Average; 90 - 110, Average; 111 - 120, High Average; 121 - 130, Superior; 131+. K.C.G.'s "Total Achievement" score on the WJIII was 60, which is in the lowest possible range of "Very Low."[6]

Also, while the state agency psychologist noted from Dr. Zimmerman's report that K.C.G. could manage money and make medical decisions age appropriately, she did not pull from Dr. Zimmerman's report the information that K.C.G.'s mother had to help her with her hygiene and dress. (R 150). A review of her medical records appears to show some issues with personal hygiene. (R 128, 130, 169, 170).

The ALJ also stated in support of his Decision that K.C.G. had "passed the LEAP test after the fourth grade." (R 17, 18). There is no written evidence of this in the record.

---

[5] Nancy Mather, Lynne E. Jaffe, Woodcock-Johnson III, Reports, Recommendations, and Strategies 129 (2002).

[6] *Id*.

13

The ALJ apparently relied on K.C.G.'s mother's testimony, which was "I think she passed the LEAP test." (R 29). K.C.G. initially testified she was in fourth grade, then corrected it to fifth grade. (R. 26). Her Individualized Education Program (IEP) shows multiple accommodations for the LEAP, including "Tests read aloud except Reading Comprehension," "Extended Time," "Small Group," and "Use of a Calculator." (R 147).

Considering K.C.G.'s Verbal Comprehension (verbal IQ) score of 69, her Post Scale (full scale IQ) score of 68, her likely severe obesity, and her likely deficits in adaptive functioning, the undersigned finds the ALJ's determination that Listing 112.05D was not met is not supported by substantial evidence of record. The undersigned is unable to determine from the record, without improperly weighing the evidence, whether K.C.G.'s obesity is a severe impairment and the extent of her adaptive functioning. Therefore, remand to the ALJ is recommended for consideration of K.C.G.'s obesity in the disability analysis.

*Recommendation*

For the reasons given above,

**IT IS RECOMMENDED** that this matter be **REMANDED** to the Commissioner for reconsideration of claimant's obesity in the disability analysis, particularly whether Listing 112.05D is satisfied.

**IT IS FURTHER RECOMMENDED** that a copy of this Report and Recommendation, if adopted by the District Judge, be given to both the ALJ originally

issuing this Decision and to the ALJ hearing this matter on remand.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Lafayette, Louisiana, this 15th day of February, 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

15